UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN ELLIS, JR.,<br><br>    Plaintiff,<br><br>  v.<br><br>DIRECTOR WOODFORD; et al.,<br><br>    Defendants.<br>_____ / | No. C 05-2110 SI (pr)<br><br>**ORDER DENYING SUMMARY JUDGMENT MOTION** |

## INTRODUCTION

This case is now before the court for consideration of defendants' motion for summary judgment. For the reasons discussed below, the motion will be denied.

## BACKGROUND

This action concerns the use of force on Franklin Ellis on May 4, 2004, while he was incarcerated in the general population at Pelican Bay State Prison. The following facts are undisputed unless otherwise noted.

Sergeant Coleman was working at Pelican Bay as the B facility program sergeant. Correctional officers Marvin, Freeman, Hahn, Powers and Duran also were working in the B facility. At that time, Ellis was residing in a single cell on the second tier of the B facility.

On May 4, 2004, officers in the B facility decided to move Ellis to a new cell. That day, some prisoners in single cells were to be moved to double cells to make room for some arriving prisoners. Defendants presented evidence that Ellis had repeatedly changed his mind about whether he would agree to move, so a lieutenant ordered sergeant Coleman to supervise Ellis'

move. Ellis suggests he was being moved because correctional staff were annoyed with him based on an exchange in the exercise yard earlier that day.

At about 6:30 p.m., sergeant Coleman, and officers Hahn, Marvin and Freeman approached Ellis' cell. The cell was dark. Once they were at the cell door, sergeant Coleman ordered Ellis to turn on his bright light because he was going to be moved. Ellis did not turn on the bright light. Sergeant Coleman then ordered that the cell door be opened by the control booth officer. When the cell door opened partially, Ellis jammed the door and prevented it from opening. Sergeant Coleman warned Ellis to stop jamming the door, but Ellis did not comply. Ellis continued to jam the door and yelled "'fuck you.'" Coleman Decl., ¶ 8. Ellis essentially conceded he made the statement as he declared that "if I say 'fuck you' that is not a threat to harm defendants. That's my First Amendment right to say what I like at anytime." Ellis Decl., ¶ 3. At about this time, other inmates began yelling words of encouragement to Ellis to the effect of "'hold strong, make the fuckers come get you.'" Id. at ¶ 9. Sergeant Coleman became concerned with the officers' security and the building security. He dispensed through the cell door a burst from his pepper spray cannister, hitting Ellis in the face and chest area. Ellis then retreated to the back of his cell.

Pelican Bay's Use of Force Policy indicates that an immediate use of force may be proper when an inmate is in the act "of jamming items into the door track in an attempt to make the door inoperable." Coleman Decl., Exh. A, p. 014.

Because Ellis' cell door was jammed and could not be completely opened, sergeant Coleman instructed the control booth officer to close it. Sergeant Coleman then left the tier to retrieve another cannister of pepper spray. This provided a cool down period for Ellis to thinks about the situation. Other correctional officers remained on the tier. While sergeant Coleman was gone, Ellis turned on his bright light, stood by his sink pouring water over his head, and had removed any obstruction from the cell door. Sergeant Coleman then returned with another can of pepper spray.

The parties disagree about what happened next.

2

<u>Ellis' version</u>: Coleman began spraying Ellis again with pepper spray and defendants told him to back up to the door and submit to handcuffs. Complaint, pp. 6-7. Ellis states, "I complied with their instructions and turned my back to the door and began backing up to it with my hands positioned behind me to stick through the tray slot in order to be handcuffed. Before the defendants attempted to handcuff me the door was being opened, and immediately thereafter all of the defendants began hitting me with clenched fists in the head and body area." <u>Id.</u> Ellis had a pin in his left hip that he contends made it "impossible" for him to have kicked Freeman in the chest because that would have caused all his weight to be on one leg which would have caused great pain to him and possibly damaged his hip. Ellis Decl., ¶ 2. Ellis also stated in his complaint that some defendants were angry with him because he was perceived to have been mouthing off to correctional officers earlier that day during yard time. <u>See</u> Complaint, p. 5.

<u>Defendants' conflicting version</u>: Sergeant Coleman returned to the area and asked Ellis if he was ready to be escorted from his cell, and Ellis indicated that he was. Sergeant Coleman felt that Ellis was then willing to cooperate with instructions. Ellis complied with sergeant Coleman's instructions to turn his back to the cell door, a procedure used "because it provides better control over the situation for the officers and is intended to increase safety for the officers and the inmates." Coleman Decl., ¶ 15. Sergeant Coleman instructed the control booth officer to open the cell door. As the cell door opened, Ellis quickly turned and kicked officer Freeman in the chest. Officer Freeman was pushed backwards into the second-tier handrail. Sergeant Coleman immediately pepper-sprayed Ellis in the face. Ellis continued forward out of the cell and was kicking and swinging his closed fists in an attempt to hit staff. Officer Freeman regained his balance and pushed Ellis backwards. Ellis hit his head as he went down to the floor. Defendants pinned down the struggling and kicking Ellis and put him in handcuffs and leg restraints.

Officers Powers and Duran escorted Ellis out of the unit. Ellis contends that sergeant Coleman kicked him in the buttocks very hard as he was being escorted to the medical clinic. Sergeant Coleman denies that he or any defendant kicked Ellis.

Ellis was decontaminated on the yard shower and then escorted to the B-facility medical

3

clinic for evaluation. The medical report for the incident states that the inmate stated, "I want to get checked out." Plaintiff's Opposition, Exh. A. The injuries noted were "dollar size swelling R forehead wound hairline near R ear. No LOC. Alert oriented." Id. The treatment listed on the medical report was listed as "showered. Cleansed wounds." Id. The medical report also indicates that Ellis was cleared for administrative segregation by a nurse within an hour of the time he was first seen in the clinic.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred at Pelican Bay in Del Norte County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendant's challenge to the Eighth Amendment claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the

4

nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendant's qualified immunity defense, the moving party bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537; see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Ellis' verified complaint is considered in opposition to the motion for summary judgment.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

## DISCUSSION

A prisoner has the right to be free from cruel and unusual punishment, including physical abuse by guards. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley v. Albers, 475 U.S. 312, 317 (1986)). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

As evident in the "Background" section above, the parties' versions of the incident differ markedly starting at the point where sergeant Coleman returned to the scene. If believed, defendants' description of using the force necessary to handcuff and subdue an inmate who had kicked one correctional officer and was kicking and struggling after he was put on the floor to be put in restraints would lead to a conclusion that the force used was not excessive. If believed, plaintiff's version of being needlessly pepper-sprayed and tackled and beaten by defendants when he had turned his back to submit to handcuffing would lead to a conclusion that the force used was excessive. But summary judgment is not the place for credibility determinations. The court could not grant judgment in defendants' favor without accepting defendants' version and disbelieving plaintiff's version of the events that transpired. A trier of fact must hear both versions and decide who to believe. Ellis has established a "'genuine issue for trial'" concerning the excessiveness of the force used on him on May 4, 2004. Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Summary judgment therefore is not appropriate on the excessive force claim. The same factual disputes that preclude summary judgment on the excessive force claim preclude summary judgment on the qualified immunity defense, as defendants would not be entitled to qualified immunity under Ellis' version of the facts.

Both sides' cases have weaknesses: In at least the first half of the incident – up until sergeant Coleman left the area to retrieve another can of pepper spray – Ellis was not complying with correctional officers' commands. Also, Ellis' injuries appear to be rather slight, which may

6

greatly decrease the monetary value of his claim although it does not mean that the force was not excessive. As to defendants' side of the story, the lack of handcuffs on Ellis when his cell door was opened is peculiar. Even considering Coleman's statement that having an inmate back up to the door increases control over him and Coleman's explanation at the preliminary hearing that handcuffs weren't required, see Opposition, Exh. C (3/3/05 RT 19-21), the lack of handcuffs seems unusual in light of the evidence that Ellis had already jammed his cell door, Ellis had been pepper-sprayed once, Ellis had earlier changed his mind on whether he would agree to the move, a correctional lieutenant was concerned enough to send sergeant Coleman to supervise Ellis' cell move, and there were six correctional staff members present to deal with Ellis' move. In light of these facts, a jury reasonably could agree with Ellis' view that staff wanted a physical confrontation with him. The parties may wish to explore settlement of this case; upon request, the court will refer the case to a magistrate judge for settlement discussions.

## CONCLUSION

Defendants' motion for summary judgment is DENIED. (Docket # 22.) Now that the court has ruled on the motion in which defendants raised their qualified immunity defense, the stay on discovery imposed in the June 27, 2006 Order Staying Discovery And Denying Default is LIFTED. Discovery may resume immediately.

No later than **March 2, 2007**, the parties must file and serve status reports indicating what discovery remains to be done, the amount of time needed for discovery, whether any further motions will be filed, when they will be ready for trial, and the expected length of the trial. The status conference statements need not be jointly prepared.

Defendants must file and serve an answer to the complaint no later than **March 2, 2007.**

IT IS SO ORDERED.

Dated: January 23, 2007

_____
SUSAN ILLSTON
United States District Judge